# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **CHARLES W. GIBSON,** *Individually and as Co-Conservator for the person and estate of Charles A. Gibson*; **CRAIG GIBSON,** *Individually*; **and MARK GIBSON,** *Individually*, <br><br>    *Plaintiffs*, <br><br>v. <br><br>**ROBERT DEWITT GIBSON,** *Individually and as Co-Conservator for the person and estate of Charles A. Gibson*, <br><br>    *Defendant*. | **CIVIL ACTION NO.** <br> **5:20-cv-00058-TES** |

## ORDER DISMISSING CASE

After removing this action from the Superior Court of Monroe County, Georgia, Defendant Robert Dewitt Gibson ("Robert") filed a Motion to Dismiss [Doc. 2] pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), respectively, for insufficient service of process and for failure to state a claim upon which relief can be granted. *See* [Doc. 1-1 at ¶ 2]. In short, this action seeks to void a deed vesting title in certain real property to Defendant Robert and his father, Charles A. Gibson ("Mr. Gibson"), jointly with a right of survivorship. *See generally* [Doc. 1-3]. In his Motion to Dismiss, Defendant Robert contends that Plaintiffs' Complaint [Doc. 1-3] should be dismissed for

three reasons.

First, relying on Rule 12(b)(6), Defendant Robert argues that dismissal is appropriate because Plaintiffs do not have standing to challenge the deed at issue since they have no interest in the property. [Doc. 2 at p. 3]. Second, he argues that this case should be dismissed because Plaintiffs filed their Complaint over six months after the seven-year statute of limitations expired. [*Id.* at p. 4]. And third, under Rule 12(b)(5), he argues that Plaintiffs failed to properly serve him. [*Id.* at pp. 4–5].

Since Defendant Robert filed his dismissal motion, Plaintiffs have conceded that they lack standing to bring this action in their individual capacities, and the parties have resolved the issues related to insufficient service of process. [Doc. 10 at pp. 5–6 ("Plaintiffs Charles W. Gibson, Craig Gibson, and Mark Gibson, in their individual capacities, concede that they lack standing to maintain this action, albeit for reasons different than those propounded by . . . Defendant [Robert].")]; *see also* [Doc. 13 at pp. 1, 6]. Therefore, Defendant's Rule 12(b)(5)-based arguments are moot, and Plaintiff Charles W. Gibson ("Charles"), as co-conservator of Mr. Gibson and his estate, is the only remaining plaintiff in this case and must now rely exclusively on his co-conservator status in order to proceed. However, upon review of the record and the applicable law, the Court finds that it lacks subject-matter jurisdiction over this case and **DISMISSES** it.

# FACTUAL BACKGROUND

The facts of this case are relatively straight forward and, unless otherwise noted, are taken from the Complaint and assumed to be true for the purposes for ruling on Defendants' Motion to Dismiss.

Mr. Gibson has four sons, three of which are the plaintiffs in this action. [Doc. 1-3 at ¶¶ 2, 4–7]. His fourth son, Robert, is the defendant. [*Id.* at ¶¶ 2, 7]. Plaintiff Charles, in his capacity as co-conservator and as the only remaining plaintiff, claims that a deed his father executed in July 2012 conveying a one-half interest (jointly with a right of survivorship) in certain real property to his brother, Defendant Robert, is the product of undue influence and should be voided. [*Id.* at ¶¶ 39–42].

In October 2007, Mr. Gibson conveyed the property situated at 3132 Juliette Road, Juliette, Monroe County, Georgia, to his four sons and reserved a life estate for himself. [*Id.* at ¶¶ 1, 8]; *see also* [Doc. 1-2 at p. 1]; [Doc. 10 at p. 2]. Shortly thereafter, a third party interested in purchasing the property approached Mr. Gibson. [Doc. 1-3 at ¶ 9]. Unaware of the life estate's impact on his ability to sell the property, Mr. Gibson sought to regain title in fee simple from all four of his sons. [*Id.* at ¶ 10]. Defendant Robert complied and conveyed his interest back to his father in August 2009. [*Id.* at ¶ 11]. Defendant Robert's three brothers, however, did not convey their interest back to Mr. Gibson because they were "not confident" in their father's intentions and his ability

3

to make decisions. [*Id.* at ¶ 12].

On the basis that he was not informed of a life estate reservation's legal effect on his ability to sell the property, Mr. Gibson filed a declaratory judgment action against Defendant Robert's three brothers, Plaintiff Charles, Craig, and Mark, in 2010. [*Id.* at ¶¶ 13–15]. The declaratory judgment action ended in a settlement agreement by which Defendant Robert's brothers accepted a $75,000 payment, *see* [Doc. 2 at p. 2], from their father and agreed to convey their interests back to Mr. Gibson. [*Id.* at ¶ 15]. Then, in July 2012, Mr. Gibson conveyed an undivided one-half interest in the property with a right of survivorship to Defendant Robert. [*Id.* at ¶ 16].

However, sometime in 2015, Mr. Gibson was diagnosed with Alzheimer's disease, and due to the progression of his illness, he was placed in a conservatorship by a state court in Tennessee on August 27, 2019. [*Id.* at ¶¶ 26–29, 31]. The Tennessee court appointed Defendant Robert and the remaining plaintiff, his brother Charles, as co-conservators of both Mr. Gibson and his estate. [*Id.* at ¶ 29].

As previously stated, this lawsuit alleges that the deed conveyed to Defendant Robert in 2012 by Mr. Gibson should be voided because of Defendant Robert's alleged undue influence on him. [*Id.* at ¶¶ 39–42]. However, Defendant Robert argues that the Order of Conservatorship, [Doc. 1-3 at pp. 123–26], from the state court in Tennessee does not give Plaintiff Charles the authority to unilaterally file suit on behalf of Mr. Gibson's estate without the consent of the other co-conservator—which is Defendant

4

Robert. [Doc. 13 at p. 1]. This argument, lodged by Defendant Robert, raises an obvious concern: shouldn't any interpretation of the Conservatorship Order be made by the court that issued it? The short answer is yes.

Defendant Robert contends that the Conservatorship Order appointed him *and* his brother, Plaintiff Charles, as co-conservators "of the person and *the estate of*" Mr. Gibson, and it "[t]ransferred [f]rom the Ward" to the co-conservators "[t]he right to prosecute and defend lawsuits[ ] and the right to pursue litigation . . . ." [Doc. 1-3 at pp. 123–24] (emphasis added). Using the Conservatorship Order's plain language, Defendant Robert points out that it does not permit one co-conservator to exercise any of the rights conferred upon them without the consent of the other. [Doc. 13 at p. 2]. Based on this, Defendant Robert argues that Plaintiff Charles lacks standing to bring this lawsuit without his consent. [*Id.*]. However, as explained below, the Court finds that the probate exception to federal diversity jurisdiction bars it from adjudicating the merits of Defendant Robert's arguments, and it **DENIES** his Motion to Dismiss [Doc. 2] as moot.

## **DISCUSSION**

In reality, the necessary and true party in interest in this case is Mr. Gibson, who has been declared by the Circuit Court of Campbell County, TN, to be incapable of handling his own affairs and for whom such court has appointed his sons Plaintiff Charles and Defendant Robert as co-conservators of his estate. Hence, Mr. Gibson can

5

"pursue litigation" concerning his property (his estate) only through his *co-conservators*—Plaintiff Charles and Defendant Robert. *See* [Doc. 1-3 at pp. 123–24]. They, together, would have to sue Defendant Robert in his individual capacity, as there has been no showing that *one* co-conservator alone can do it. Given the plain language of the Conservatorship Order, the Court (if it had subject-matter jurisdiction in this case) would be inclined to agree that a single co-conservator cannot bring suit on behalf of Mr. Gibson's estate. *See* n.1, *infra*.

As a matter of federalism, it appears that any questions regarding who may sue on behalf of the estate of Mr. Gibson and under what circumstances a conservator may pursue litigation are retained by and lie within the exclusive jurisdiction or authority of the appointing court, the Circuit Court for Campbell County, Tennessee—not this court. *See AmSouth Bank v. Cunningham*, 253 S.W.3d 636, 642–43 (Tenn. Ct. App. 2006) (quoting *In re Conservatorship of Clayton*, 914 S.W.2d 84, 92 (Tenn. Ct. App. 1995)) ("[C]ourts appointing conservators 'retain continuing control over guardians and conservators because the persons who accept these appointments become "quasi-officials" of the court appointing them.'"); *see also* O.C.G.A. § 29-5-10 *in connection with* O.C.G.A. § 29-5-71 (stating that "any interested person" (including the ward under a conservatorship) may petition the court ordering the conservatorship to modify its terms "by adjusting the duties or powers of the conservator").

It further appears to the Court that both Plaintiff Charles and Defendant Robert

have inherent conflicts of interest in this litigation in their capacities as co-conservators. On one hand, if Defendant Robert did take advantage of his father through the exercise of undue influence such that the deed should be voided, then, obviously, Plaintiff Charles and his brothers, Craig and Mark, potentially stand to inherit some interest in the real property at issue in this case.[1] Thus, they would have an incentive to encourage Plaintiff Charles to bring the suit against their brother ( to their potential benefit and at Robert's expense). Again, if he did take advantage of his father, Defendant Robert presumably must consent to file suit against himself, along with Plaintiff Charles as co-conservator, something which he clearly doesn't want to do. Therefore, Defendant Robert also has a clear conflict of interest in that he could effectively, in his own self-interest and to the detriment of the interests of his father and his brothers, use his status as co-conservator of his father's estate to prevent any action seeking to void the deed and terminate his right of survivorship.

Thus, given their mutual and contrasting conflicts of interests, the Campbell County Circuit Court must decide whether to remove both Plaintiff Charles and Defendant Robert as co-conservators and appoint a neutral party to serve as conservator, (if only to investigate and file suit if deemed warranted). [Doc. 1-3 at pp.

---

[1] The Court also notes that, through this action, the three sons who Mr. Gibson paid to reconvey their interest in the subject property that he originally gifted to them, now seek to recover such property by having it retitled solely in Mr. Gibson's name. If they inherit this property of Mr. Gibson's estate as heirs or beneficiaries, they would effectively inherit the same interests for which they were already compensated by Mr. Gibson.

7

123–26].

Furthermore, it must be recognized that, even if Defendant Robert as one of the co-conservators of Mr. Gibson's estate, actually consented to or joined in the claim against himself, in his individual capacity, the Court would still lack subject-matter jurisdiction over the lawsuit. Indeed, it was Defendant Robert who removed this lawsuit from state court on the basis of diversity jurisdiction — a lawsuit appearing at face value, *see Goodstein*, *infra*, to be within the Court's jurisdiction since federal courts have original jurisdiction over civil cases where the amount in controversy exceeds $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a); *see generally* [Doc. 1-1]. However, there is a recognized exception to federal diversity jurisdiction in cases involving state probate or estate matters. *Goodstein v. Goodstein*, No. 18-80497-CV-MIDDLEBROOKS, 2019 WL 1383656, at *3 (S.D. Fla. Feb. 5, 2019) (quoting *Stuart v. Hatcher*, 757 F. App'x 807, 809 (11th Cir. 2018)).

This exception, notably, applies to cases that would require a federal court to (1) probate or annul a will, (2) administer an estate, or (3) "dispose of property that is in the custody of a state probate court." *Goodstein*, 2019 WL 1383656, at *5 (quoting *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006)). As shown above, the claims raised in this case would clearly invite intervention by this Court with the 2018 Conservatorship proceedings that control Mr. Gibson's estate and the property in his estate, which proceedings remain within the exclusive jurisdiction and authority of the appointing

court in the State of Tennessee. Therefore, Plaintiff Charles' claims are also barred by the probate exception.

## **CONCLUSION**

Because the Circuit Court for Campbell County, Tennessee, undoubtedly retains exclusive jurisdiction over its Conservatorship Order and the administration of Mr. Gibson's estate, any decision over who should control any litigation and/or determining the issues of the apparent conflicts of interests are rightly left to it. Allowing this case to proceed with only one of the co-conservators filing on behalf of Mr. Gibson's estate, especially given the conflicts of interests, would unquestionably interfere with the administration of Mr. Gibson's estate and simultaneously intrude upon the state court's exclusive jurisdiction. Thus, the Court must **DISMISS** this case in its entirety, because it lacks subject-matter jurisdiction. Defendant Robert's Motion to Dismiss, therefore, [Doc. 2] is also as moot.[2]

---

[2] In the event a reviewing court finds that the Court has subject-matter jurisdiction, dismissal of this lawsuit is still warranted for the reasons asserted by Defendant Robert. [Doc. 13 at pp. 1–3]. The Georgia Court of Appeals recently confirmed Defendant Robert's position: that one co-conservator cannot maintain an action without the consent of the other co-conservator. *See Rondowsky v. Beard*, 835 S.E.2d 28, 30–31 (Ga. Ct. App. 2019).

In *Rondowsky*, a co-trustee filed suit against the executrix of an estate alleging, among other things, a breach of fiduciary duty. *Id.* at 30. On appeal, the Georgia Court of Appeals confirmed this principle of consent by upholding the trial court's conclusion that a co-fiduciary could not "file suit . . . over the objections of her co-trustee." *Id.* at 31. The situation presented in this case is identical to the issue the co-trustee faced in *Rondowsky*. As a co-conservator with his brother, Plaintiff Charles must have his brother's consent in order to have standing to bring this action, or any action for that matter. *Id.*

Here, there is nothing in the record to indicate that Defendant Robert has given his consent for this lawsuit. Accordingly, Plaintiff Charles, acting alone as a co-conservator, lacks standing to sue.

SO ORDERED, this 13th day of April, 2020.

                                         <u>S/ Tilman E. Self, III</u>
                                         TILMAN E. SELF, III, JUDGE
                                         UNITED STATES DISTRICT COURT